UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CURT DRAEGER, on behalf of himself
and all others similarly situated,

        Plaintiff,

    v.                                        Case No. 19-C-1880

GUARDIAN PEST SOLUTIONS, INC.,

        Defendant.

---

## DECISION AND ORDER GRANTING DEFENDANT'S
## MOTION TO COMPEL ARBITRATION

---

Plaintiff Curt Draeger filed this action on behalf of himself and all others similarly situated against his former employer, Defendant Guardian Pest Solutions, Inc., asserting claims under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., and Wisconsin's Wage Payment and Collection Laws (WWPCL). This matter comes before the court on Defendant's motion to compel arbitration. For the following reasons, the motion will be granted and the case will be dismissed.

## BACKGROUND

On July 30, 2018, Defendant sent Plaintiff an Offer of Employment letter (the 2018 Agreement) for a permanent, full-time position with Defendant as a Service Specialist. Dkt. No. 19-1. The 2018 Agreement contained the terms and conditions of Plaintiff's employment with Defendant, including information about his position, pay structure, benefits and pension, and special employee covenants. The pay structure provision stated:

1. **Production Based Pay**
    - You will be paid per month the greater of **$2,500.00** or **25%** of the net revenue of production that you produce within a calendar month
        - **Production**

- **25%** of Net Revenue from contracted services per month
- **25%** of Net Revenue from Special Services per month
- **25%** of Net Revenue from all Thermal Remediation Services performed per month
- **25%** of Net Revenue from Bare Ground/Vegetation Management Services that you generate in a calendar day with a maximum payout of $500.00 per day
  - **Guarantee**
    - **2,500.00** per month. The guarantee is payable semi-monthly on the 15th, and at month end in accordance with Guardian Pest Solutions Inc. standard payroll practices.
      - Guarantee will be paid $1,250 a pay period
      - Production Checks will be paid on the 15th of the month

2. **Merchandise Production**
   - **10%** of Net Revenue from sale of any merchandise per month.

*Id.* at 1. It also contained a "Dispute Resolution" section which provided:

> The parties specifically agree that except as provided in (i) below, this Agreement and their relationship will at all times be maintained in strict confidence. The parties agree that any dispute or controversy arising under this Agreement or its formation or termination shall be submitted to arbitration, not litigation, for binding resolution.

*Id.* at 4. Plaintiff signed the 2018 Agreement on August 6, 2018, thereby accepting the conditions of employment indicated in the agreement. *Id.* at 5.

In December 2019, Defendant determined that it would eliminate the route Plaintiff worked. Dkt. No. 24-1. Defendant offered Plaintiff a nonexempt/hourly Service Specialist position in the Milwaukee area and provided Plaintiff with a second Offer of Employment letter (the 2019 Agreement). Dkt. No. 19-2. The agreement defined Plaintiff's pay structure as follows:

> Your compensation is $17.31 per hour worked. Your wages are payable semi-monthly on the 15th, and at month end in accordance with Guardian Pest Solutions, Inc. standard payroll practices.

*Id.* at 1. The 2019 Agreement also included an integration clause and an arbitration provision that was identical to the provision in the 2018 Agreement. Plaintiff signed the 2019 Agreement on December 11, 2019. Plaintiff terminated his employment on December 19, 2019.

2

Plaintiff filed this action against Defendant on December 23, 2019, alleging violations of the FLSA and WWPCL. Plaintiff alleges that Defendant violated the FLSA by failing to account for and compensate Plaintiff and the FLSA Collective for overtime premium pay for each hour worked in excess of forty hours each workweek because Defendants' pay practices classified Plaintiff and the Collective as "exempt" for compensation purposes and Defendant failed include all forms of non-discretionary compensation in Plaintiff's and the Collective's regular rates of pay for overtime calculation purposes. Compl. ¶¶ 91–92, Dkt. No. 1. Plaintiff makes similar claims under the WWPCL on behalf of himself and the Wisconsin Class. *Id.* ¶¶ 103–04.

## ANALYSIS

The Federal Arbitration Act (FAA) embodies a national policy favoring arbitration, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011), and "requires courts to place arbitration agreements 'on equal footing with all other contracts.'" *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1424 (2017) (quoting *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 465 (2015)); 9 U.S.C. § 2. To compel arbitration under the FAA, three elements must be present: "(1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) (quoting *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017)). "[O]nce an enforceable arbitration contract is shown to exist, questions as to the scope of arbitrable issues should be resolved in favor of arbitration." *Scheurer*, 863 F.3d at 752. The party opposing arbitration bears the burden of showing why the arbitration provision should not be enforced. *See Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000).

Plaintiff does not dispute that a valid, enforceable agreement to arbitrate certain claims exists. Instead, he asserts that the 2019 Agreement is the controlling instrument and that his wage-

and-hour claims do not fall within the scope of that agreement. The 2019 Agreement contained an integration clause that reads, "[t]his Agreement constitutes the sole and complete agreement between the parties, superseding any and all other agreements between the parties." Dkt. No. 19-2. Plaintiff argues that, since the integration clause states that the 2019 Agreement supersedes all prior agreements, considering evidence of the 2018 Agreement would violate the parol evidence rule. But the parol evidence rule does not apply to this case. An agreement "is not superseded or invalidated by a subsequent integration if it is not inconsistent with the integrated contract and would naturally be made as a separate agreement." *W.R. Millar Co. v. UCM Corp.*, 419 N.W.2d 852, 855 (Minn. Ct. App. 1988) (citing *Red Lobster Inns v. Lawyers Title Ins. Corp.*, 656 F.2d 381, 384 (8th Cir. 1981)).[1] The 2018 and 2019 Agreements are independent and govern different subject matters. After Defendant terminated Plaintiff's original position, the parties entered into a new, separate employment agreement that described the terms of Plaintiff's new position. The 2018 Agreement governed Plaintiff's employment with Defendant as a Service Specialist subject to the Production Based and Merchandise Production Pay Structure and the 2019 Agreement governed his employment with Defendant as an hourly-paid Service Specialist in the Milwaukee area. The context of the pay structure provisions in the agreements demonstrates that the agreements were made separately and governed two unrelated positions held by Plaintiff. Plaintiff's wage-and-hour claims only concern the pay structure agreed to in the 2018 Agreement. In short, the 2018 Agreement was not superseded by the 2019 Agreement and is the controlling instrument.

---

[1] Under Wisconsin's choice-of-law principles, the parties to a contract may expressly agree that the law of a certain jurisdiction will control. *See Sonoco Bldgs., Inc. v. Am. Home Assurance Co.*, 87 F.2d 1350, 1353 (7th Cir. 1989). The 2018 and 2019 Agreements indicate that the "Agreement shall be governed and construed in accordance with the laws of the State of Minnesota." Dkt. No. 19-1 at 3. Therefore, the court will apply Minnesota law.

4

Having found that the 2018 Agreement is the controlling instrument, the court must now consider whether the arbitration provision in that agreement encompasses Plaintiff's claims against Defendant. The arbitration provision covers "any dispute or controversy arising under this Agreement." Dkt. No. 19-1 at 4. The Seventh Circuit has recognized that broad arbitration provisions, like the one in this case, have expansive reach and create a presumption of arbitrability. *See Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909–10 (7th Cir. 1999) (citing *Elzinga & Volkers, Inc. v. LSSC Corp.*, 47 F.3d 879, 881 (7th Cir. 1995); *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994)). Indeed, "the language 'arising out of' is broad in scope and reaches all disputes that have their origin in the employment contract, regardless of whether the dispute involves interpretation or performance of the contract *per se*." *Marzano v. Proficio Mortg. Ventures, LLC*, 942 F. Supp. 2d 781, 789 (N.D. Ill. 2013) (citing *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012)). The plain language of the arbitration provision is sufficiently broad to cover claims arising from or relating to Plaintiff's employment, and Plaintiff's wage-and-hour claims clearly arise out of the 2018 Agreement. As a result, the court finds that Plaintiff's wage-and-hour claims fall within the scope of the arbitration provision and must be submitted to arbitration.

The parties further dispute whether arbitration should proceed on an individual or class-wide basis. Defendant asserts that the court should compel individual arbitration, while Plaintiff asserts that the arbitrator, and not this court, should determine whether he is entitled to bring his claims on behalf of himself and all others similarly situated on a collective or class basis. The Supreme Court recently held in *Lamps Plus, Inc. v. Varela* that under the FAA, a court cannot compel arbitration on a class-wide basis when the agreement is silent or ambiguous about the availability of such an arbitration. 139 S. Ct. 1407, 1415 (2019). Though the "parties are free to

5

authorize arbitrators to resolve such questions," the Court refused to "conclude that they have done so based on 'silence or ambiguity' in their agreement, because 'doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.'" *Id.* at 1417 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 945 (1995)). In other words, unless there is clear evidence that the parties intended the arbitrator to decide the availability of class-wide arbitration, the district court is to decide this gateway question. *Id.*; *see also Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 506 (7th Cir. 2018). The 2018 Agreement does not clearly indicate that the parties intended for an arbitrator to decide the availability of class arbitration; therefore, the court will address this issue. Defendant argues that the 2018 Agreement is ambiguous as to the issue of class arbitrability. Although the arbitration provision in the 2018 Agreement plainly governs disputes between Plaintiff and Defendant, it does not expressly contemplate disputes of non-parties. Because there is not a clear contractual basis for concluding the parties agreed to arbitrate on a class-wide basis, the court must compel individual arbitration.

Finally, the FAA specifies that, once a court has determined that arbitration is appropriate, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Notwithstanding the language of § 3, dismissal is appropriate here. There is no need to continue this action because it is clear that all of Plaintiff's claims will be resolved by arbitration. It makes little sense for this case to remain pending when there is no further action for the court to take. Once arbitration is complete, the parties are free to commence an action to either enforce or vacate the arbitration award, but that would be a new action.

## CONCLUSION

For these reasons, Defendant's motion to compel arbitration on an individual basis (Dkt. No. 17) is **GRANTED** and this case is dismissed. The clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 17th day of June, 2020.

s/ William C. Griesbach
William C. Griesbach, District Judge
United States District Court